## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE                                                ) | |
|                                                       ) | **Case No. 09-20996-TLM** |
| **WALTER B. SCOTT & SONS, INC.,** ) | |
|                                                       ) | **Chapter 11** |
| Debtor.                          ) | |
| _____ ) | |
|                                                       ) | |
| **FINANCIAL FEDERAL CREDIT** ) | |
| **INC.,**                                       ) | |
|                                                       ) | |
| Plaintiff,                          ) | |
|                                                       ) | |
| v.                                                   ) | **Adv. No. 09-07037-TLM** |
|                                                       ) | |
| **WALTER B. SCOTT & SONS, INC.,** ) | |
| **DENNIS J. SCOTT, JAMES B.**      ) | |
| **SCOTT, BONNIE J. SCOTT, and**   ) | |
| **KELLY F. SCOTT,**                      ) | |
|                                                       ) | |
| Defendants.                     ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

**INTRODUCTION**

This is an adversary proceeding in which Financial Federal Credit Inc.

("FFCI") seeks a declaratory judgment to the effect that its auction of certain

logging equipment was commercially reasonable.  Chapter 11 debtor in possession

Walter B. Scott & Sons, Inc. ("Debtor"), who pledged the logging equipment as

MEMORANDUM OF DECISION - 1

collateral to secure financing from FFCI, and Debtor's four principals — Dennis
Scott, James Scott, Bonnie Scott, and Kelly Scott (collectively "Individual
Defendants") — assert counterclaims against FFCI for violation of the Idaho
Uniform Commercial Code ("UCC"), breach of contract, negligent
misrepresentation, and conversion.[1]

Before the Court is FFCI's Motion for Summary Judgment as to all claims
and counterclaims.  Doc. No. 36 ("Motion").  In conjunction with its Motion,
FFCI moves to strike Debtor's submissions made in opposition to FFCI's
summary judgment Motion.  *See* Doc. No. 48.  After a July 20, 2010 hearing, the
Court took the matters under advisement.  Upon consideration of the record, the
arguments, and the applicable authorities, the Court will grant FFCI's Motion in
part, and deny it in part.

**THE RECORD**

Before reaching the summary judgment issues, the Court must first identify
what portion of the record may be properly considered.  FFCI requests that the
Court strike the materials submitted by Debtor in opposition to FFCI's Motion.
FFCI asserts several grounds in support of its motion to strike.

---

[1]  To simplify presentation, this Decision will hereinafter refer to just the Debtor, the
primary Defendant, unless otherwise indicated, the Court noting that Debtor and the Individual
Defendants have appeared through the same counsel and made consolidated submissions and
arguments.

MEMORANDUM OF DECISION - 2

## A.    Local Bankruptcy Rule 7056.1

First, FFCI contends that the materials submitted by Debtor, including its brief, should be stricken as untimely filed under Local Bankruptcy Rule 7056.1. Local Rule 7056.1 applies to motions for summary judgment in adversary proceedings.[2]  It requires a party opposing a motion for summary judgment to file a responsive brief and a statement of disputed and undisputed facts, with any affidavits or other materials the party wishes to file, at least 14 days before the date of the hearing.  LBR 7056.1(b)(2).  Failure to comply with LBR 7056.1 may result in a continuance of the hearing and, with or without further hearing, the imposition of costs, attorney's fees and sanctions against a party, the party's attorney, or both. LBR 7056.1(d).

Debtor did not comply with LBR 7056.1.  Its brief and supporting materials were filed only seven days prior to the hearing date.  In addition, Debtor failed to file a statement of disputed and undisputed facts.  The question is whether Debtor's noncompliance with LBR 7056.1 warrants striking its response in total. The Court finds that it does not.

The Court may consider several factors when determining the consequences for failing to follow its local rules, including "(1) the public's interest in

---

[2]   The Court's Pretrial Order, entered January 11, 2010, reinforced this, ordering that all pretrial motions "must be filed and a hearing held before the Court in accordance with the Bankruptcy Rules and Local Bankruptcy Rules (*including but not limited to LBR 7056.1*) no later than July 30, 2010."  Doc. No. 34 (emphasis added).

expeditious resolution of litigation; (2) the court's need to manage its docket; (3)

the risk of prejudice to the [opposing party]; (4) the public policy favoring

disposition of cases on their merits; and (5) the availability of less drastic

sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (quoting *Henderson*

*v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).  Furthermore, a bankruptcy court

has discretion to excuse strict compliance with local rules, especially when

detrimental reliance or other prejudice has not been demonstrated.  *See Bell*

*Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.)*, 107 B.R. 707,

710 (9th Cir. BAP 1989).

      Here, allowing Debtor's submissions despite its failure to comply with LBR

7056.1 will not unnecessarily prolong the litigation or result in any significant

prejudice to FFCI.  FFCI filed its reply brief five days after Debtor's submissions

were filed, two days before the hearing.  Had Debtor complied with LBR 7056.1

by filing its response 14 days before the hearing, FFCI would have had until seven

days before the hearing to file its reply brief, giving FFCI seven days in which to

prepare and file its reply.  *See* LBR 7056.1(b)(3).[3]  Instead, FFCI only used five

days to file its reply.  Although deprived of these two additional days to prepare a

reply to Debtor's submissions, FFCI was nonetheless able to effectively respond to

Debtor's opposition, both in its brief and at the hearing.  Given the lack of

---

    [3]  For obvious reasons, Debtor raised no issue with FFCI's late reply brief, and the Court
excuses it.

MEMORANDUM OF DECISION - 4

significant prejudice to FFCI, and the policy favoring disposition of cases on the

merits, the Court concludes that it will not strike Debtor's submissions for

noncompliance with LBR 7056.1.  And since no less severe sanctions were

requested by FFCI, *see* LBR 7056.1(d), none will be imposed.

### B.    Affidavit and Report of Doug Frisbie

In opposing FFCI's Motion, Debtor filed an affidavit and appraisal report

from Doug Frisbie.  Doc. Nos. 46 and 42, respectively.  Frisbie offers opinion

testimony concerning the value that would have been received for the subject

logging equipment had the auction been conducted in a commercially reasonable

manner.  FFCI argues that the Frisbie submissions should be stricken because

Debtor failed to identify Frisbie as an expert witness during discovery.  FFCI

asserts that Debtor did not reveal Frisbie as an expert until it filed his affidavit in

opposition to FFCI's Motion, and that this untimely disclosure violates the Court's

Pretrial Order.

Rules 26 and 37 of the Federal Rules of Civil Procedure are applicable in

adversary proceedings.  *See* Fed. R. Bankr. P. 7026 & 7037.[4]  Rule 26(a)(2)

requires parties to disclose the identity of any witness that may testify at trial as an

---

[4]  Local Bankruptcy Rule 7026.1 makes certain portions of Fed. R. Civ. P. 26 not
applicable "[e]xcept as otherwise ordered by the court[.]" As discussed below, the Pretrial Order,
Doc. No. 34, here required disclosure of "expert reports" by February 8, 2010.  Debtor was aware
of the requirement, as it was discussed at the pretrial conference, and because expert disclosures
were expressly addressed by the Idaho U.S. District Court before referral to this Court.  *See* Doc.
No. 25.

MEMORANDUM OF DECISION - 5

expert.  Fed. R. Civ. P. 26(a)(2)(A).  The disclosure of an expert witness must be accompanied by a written report containing, *inter alia*, the witness' qualifications, a complete statement of the opinions the witness will express, and the reasoning and data supporting those opinions.  Fed. R. Civ. P. 26(a)(2)(B)(i).  A party must disclose its experts and provide expert reports "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(C).  A party that fails to identify an expert witness or provide an expert report for such a witness as required by Rule 26(a) is not allowed to use the expert witness to supply evidence "on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

On January 11, 2010, the Court issued a Pretrial Order in this case.  Doc. No. 34.  Therein, the Court ordered that expert reports be provided by February 8, 2010, and that any and all discovery be completed no later than June 7, 2010. Though Debtor identified Frisbie as a potential fact witness before the instant case came before this Court,[5] it never identified him as an expert witness prior to filing his affidavit and report on July 14, 2010, in response to FFCI's Motion.[6]  Nor did

---

[5]  The "path" of this litigation in arriving before this Court is described more fully *infra*.

[6]  The Court takes judicial notice of the filings docketed in this case, both in the United States District Court for the District of Idaho, Case No. CV 09-CV-258-EJL, and the United States District Court for the Southern District of Texas, C.A. No. 4:08-CV-2684.  *See* Fed. R. Evid. 201.  On March 20, 2009, while the case was before the Texas U.S. District Court, Debtor disclosed Frisbie in its Rule 26(a)(1) Initial Disclosures as an "individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings."
(continued...)

MEMORANDUM OF DECISION - 6

Debtor request relief from the Court's Pretrial Order to disclose Frisibie as an

expert.

      As a preliminary matter, the Court finds that Frisbie's affidavit testimony is

proffered as expert testimony under Fed. R. Evid. 702.  Frisbie's appraisal and

opinion concerning the value that would have been received for the logging

equipment had the auction been conducted in a commercially reasonable manner

require "specialized knowledge."  *See* Fed. R. Evid. 702.  Accordingly, Debtor was

required to disclose Frisbie as an expert witness and provide an expert report

concerning his testimony by the date prescribed by this Court in its Pretrial Order.

Debtor failed to do so.  Therefore, Debtor may not rely on Frisbie's submissions to

defend against summary judgment unless its failure to disclose was substantially

justified or harmless.  *See* Fed. R. Evid. 37(c)(1).

      Debtor's failure is neither substantially justified nor harmless.  Debtor

provided no cogent explanation for its failure to disclose Frisbie as an expert, and

the prejudice to FFCI is apparent.  The cutoff for discovery has passed and trial has

been set for October 6, 7, and 8, 2010.  By not disclosing Frisbie as an expert until

---

[6](...continued)

*See* C.A. No. 4:08-CV-2684, Doc. No. 19.  However, Debtor disclosed nothing more than Frisbie's name, indicating that it would supplement the disclosure with more detailed address and contact information at a future date.  *See id.*  On March 26, 2009, Debtor supplemented its Initial Disclosures and provided an address for Frisbie in Deer Fork, Washington.  *See* C.A. No. 4:08-CV-2684, Doc. No. 21.  Thus, while Debtor disclosed Frisbie as a potential fact witness under Rule 26(a)(1), it never disclosed him as an expert witness under Rule 26(a)(2).  *See* Fed. R. Civ. P. 26(a)(2).

MEMORANDUM OF DECISION - 7

filing its opposition to FFCI's Motion, more than a month after discovery had

closed, Debtor has deprived FFCI of the ability to depose Frisbie, solicit from its

own expert additional opinions to address Frisbie's conclusions, or conduct other

expert-related discovery.  FFCI's motion to strike will be granted as to the Frisbie

submissions and the same will not be considered by the Court for purposes of

deciding FFCI's Motion.[7]

### C.    Affidavit of Troy Black

Debtor also submitted an affidavit of Troy Black in opposition to FFCI's

motion.  Doc. No. 45.  Black's affidavit contains several opinions regarding

measures not taken by FFCI that were allegedly necessary for the logging

equipment auction to be commercially reasonable.  FFCI objects to consideration

of the Black affidavit on the grounds that Black is not qualified to render such

opinions.

Under Rule 702 of the Federal Rules of Evidence, "[i]f scientific, technical,

or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or education, may testify thereto in the

form of an opinion or otherwise . . . ."  Black is the president of an auction and

---

[7]  Frisbie's expert opinions will also be excluded at trial under this same analysis.  *See*
Fed. R. Civ. P. 37(c)(1).

MEMORANDUM OF DECISION - 8

appraisal company, a member of both local and national associations for

professional auctioneers, and has approximately 17 years of appraisal and auction

experience.  Given Black's experience and qualifications, the Court finds him

qualified to testify regarding the auctioning of equipment and other items

generally.[8]

FFCI maintains that despite Black's experience with auctions in general, he

is not qualified to opine as to the auction of logging equipment specifically, as he

has no experience with the sale of such equipment.  The Court disagrees.  That

Black has not demonstrated experience with the auctioning of logging equipment

specifically may ultimately be relevant to deciding the weight to be afforded

Black's testimony, but it does not provide an adequate basis for striking his

affidavit for purposes of summary judgment.  Thus, with regard to the Black

affidavit, FFCI's motion to strike will be denied.

### D.      Remaining Affidavits

FFCI moves to strike several other affidavits offered by Debtor in

opposition to summary judgment.[9]  The Court has considered FFCI's arguments

with respect to these affidavits and finds them unpersuasive.  FFCI's motion to

---

[8]  *See In re Smitty Inv. Group, LLC*, 08.2 I.B.C.R. 67, 72–74, 2008 WL 2095523, at
*8–10 (Bankr. D. Idaho May 16, 2008).

[9]  The additional submissions to which FFCI objects are the affidavits of Kelly F. Scott,
Carrie Scott, Dan L. Musselman, and Rick L. Kraack, Doc. Nos. 38–41.

MEMORANDUM OF DECISION - 9

strike will be denied as to the same.

###### E.    Resultant Record

In sum, only the Frisbie affidavit and report are stricken.  The Debtor's remaining submissions, including the Black affidavit, are properly before the Court.  Upon this record the Court will determine whether summary judgment in favor of FFCI is appropriate.

## FACTS

###### A.    Financing Transactions

Beginning in July 2004, FFCI provided financing to Debtor for the purchase and acquisition of equipment.  Between 2004 and 2006, Debtor executed four promissory notes and corresponding security agreements in favor of FFCI. The Individual Defendants each personally guaranteed payment on the notes by executing a Guaranty.  Doc. No. 36-6, Ex. D (collectively "Guaranties").  On September 11, 2006, Debtor's total indebtedness to FFCI was consolidated into a single promissory note in the amount of $1,066,660.  Doc. No. 36-6, Ex. C ("Note").  This Note was secured by certain collateral pledged by Debtor to FFCI under a security agreement.  Doc. Nos. 36-6, Ex. A, and 44 ("Security Agreement").  The collateral included all specific items of property and equipment listed on a schedule of property attached to the Security Agreement ("Schedule A"), as well as

MEMORANDUM OF DECISION - 10

all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing . . . .

(the "Collateral").  FFCI filed a UCC-1 Financing Statement with the Idaho

Secretary of State on September 21, 2006, to perfect its security interest in the

Collateral.  Doc. No. 36-7, Ex. G.  A copy of Schedule A was attached to the

UCC-1 Financing Statement.[10]

The Security Agreement provided that in the event of default,

Debtor[11] agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs, or prepares the items for sale.  Secured Party may be the purchaser at any public sale.

In addition, the Security Agreement provided that Debtor

assumes and agrees to indemnify, pay and hold harmless Secured Party

---

[10]  The Security Agreement itself, which included the more general description of the Collateral pledged, was not attached to the UCC-1 Financing Statement.

[11]  The Security Agreement identifies Walter B. Scott & Sons, Inc. as the "Debtor," and FFCI as the "Secured Party."

MEMORANDUM OF DECISION - 11

and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party.

The Guaranties signed by the Individual Defendants contained a similar indemnification provision.

### B.    Sale of Collateral

Debtor defaulted on its payments to FFCI.  FFCI worked with Debtor to arrange the repossession and auction of the Collateral in order to pay off Debtor's outstanding debt to FFCI.  An auction was set for February 12, 2008, in St. Maries, Idaho.  On January 15, 2008, FFCI sent a Notice of Disposition of Collateral by Public Sale to Debtor and each of the Individual Defendants via U.S. First Class Mail, return receipt requested.  The sale notice contained the time and date of the auction, the terms of the bidding process, and a list of the equipment that was scheduled to be sold.  FFCI also sent sale notices to more than 110 other companies in the area that it believed might have had interest in purchasing the type of equipment that was to be available at the auction.  Notice of the auction was published in the *Spokesman-Review*, a newspaper of general circulation in the City of St. Maries, Benewah County, Idaho, twice within the ten-day period prior

MEMORANDUM OF DECISION - 12

to the February 12 auction.[12]

The auction was held February 12, 2008, as scheduled.  Thirty-six items of equipment were purchased by third parties and FFCI.  FFCI credit bid $365,000 for several pieces of equipment that it later resold to third party purchasers for $363,000.  Including FFCI's credit bid, the total amount bid for the sold equipment was $786,500.  That amount was first applied to the $704,550.22 Debtor owed FFCI, which was comprised of the $656,694.83 balance owing on the Note as of the auction date, travel and collection expenses of $3,128, auction expenses of $2,220, and recovery and repossession expenses of $42,507.39.  The remaining $81,949.78 was paid to the Internal Revenue Service based on a tax lien that had been filed against Debtor.

In a letter dated August 26, 2008, Debtor requested payment from FFCI for damages of $1,513,550 on the basis that the auction of the equipment was not commercially reasonable.  Doc. No. 36-9, Ex. O.  FFCI responded by filing a complaint against Debtor and the Individual Defendants in the United States District Court for the Southern District of Texas on September 4, 2008, seeking a judgment declaring that the auction was commercially reasonable under the UCC, and awarding costs and attorney's fees.  *See* Doc. No. 36-9, Ex. P.

On Debtor's motion, the District Court ordered a change of venue to the

---

[12]  Notices of the auction were published on February 4 and 8, 2008.

MEMORANDUM OF DECISION - 13

United States District Court for the District of Idaho; the case was transferred on

May 28, 2009. Debtor subsequently filed a voluntary petition for chapter 11 relief

on September 9, 2009, and shortly thereafter moved the Idaho U.S. District Court

to refer the case to this Court, which had been assigned Debtor's chapter 11 case.

The District Court granted Debtor's motion and the matter was referred to this

Court on November 9, 2009. On May 5, 2010, Debtor filed an Amended Answer

and Counterclaims[13] wherein Debtor asserted counterclaims against FFCI for

violation of the UCC, breach of contract, negligent misrepresentation, and

conversion.[14]

FFCI now moves for summary judgment on its claims and Debtor's

counterclaims.

---

[13] Debtor initially requested leave from the Texas U.S. District Court to file an Amended Answer and Counterclaims, but the case was transferred to the District of Idaho before any decision on Debtor's request was rendered. On November 12, 2009, shortly after the case changed venues, the Idaho U.S. District Court granted Debtor's request for leave to amend and add counterclaims. Doc. No. 26. However, Debtor did not actually file its Amended Answer and Counterclaims until May 5, 2010, though the signature on the pleading is dated February 5, 2010. *See* Doc. No. 35.

[14] The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and § 157. FFCI's claims against Debtor and Debtor's counterclaims against FFCI are core proceedings. 28 U.S.C. 157(b)(2)(B) & (C). FFCI's attorney's fees claim against the Individual Defendants as guarantors of Debtor is a non-core proceeding "related to" Debtor's chapter 11 bankruptcy case. 28 U.S.C. § 157(c)(1); *see Joremi Enters., Inc. v. Hershlowitz (In re New 118th LLC)*, 396 B.R. 885, 890–92 (Bankr. S.D.N.Y. 2008) (invoking "related to" jurisdiction over removed state court action brought by creditor to recover from guarantor of chapter 11 debtor); Collier on Bankruptcy ¶ 3.01[3][c][ii][B] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The parties have consented to having this Court decide the various issues presented in this case, including the non-core matters, by entering appropriate orders and judgments. *See* 28 U.S.C. § 157(c)(2).

MEMORANDUM OF DECISION - 14

**SUMMARY JUDGMENT STANDARD**

In adversary proceedings before this Court the summary judgment standard articulated in Federal Rule of Civil Procedure 56 applies. *See* Fed. R. Bankr. P. 7056; *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the moving party to show the absence of a genuine issue of material fact. *Id.* at 256–57. In response to a properly submitted summary judgment motion, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to withstand summary judgment. Fed. R. Civ. P. 56(e)(2). In doing so, the nonmoving party may not rely on mere allegations or denials in its own pleading but must produce specific facts, through affidavits or other admissible discovery material, showing a genuine issue for trial. *Id.*; *Barboza*, 545 F.3d at 707 (quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)).

MEMORANDUM OF DECISION - 15

Where the nonmoving party will have the burden of proof at trial, the moving party may seek summary judgment by pointing to the absence of evidence to support an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986). If the nonmoving party fails to respond with sufficient evidence to create a genuine issue of material fact on the essential element, the moving party is entitled to summary judgment. *Id.* at 322–23.

On summary judgment, all reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The Court's function at the summary judgment stage is not to weigh the evidence or determine credibility, but simply to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

**DISCUSSION AND DISPOSITION**

The posture of the instant case is somewhat unconventional. Typically, in Article 9 cases such as this, the issue of commercial reasonableness arises in the context of a secured creditor's pursuit of a deficiency judgment against the debtor. In such a case, a debtor may place the commercial reasonableness of a disposition of collateral at issue as a means of reducing or eliminating any purported deficiency. *See* Idaho Code § 28-9-626. Once the debtor has done so, the secured

MEMORANDUM OF DECISION - 16

party bears the burden of establishing that the disposition was commercially reasonable. Idaho Code § 28-9-626(b). Failure by a secured party to meet this burden triggers a presumption that the value of the collateral at the time of disposition was equal to the amount of the outstanding debt, including expenses and attorney's fees, thus eliminating any deficiency. Idaho Code § 28-9-626(c) & (d); *In re Gomez*, 01.4 I.B.C.R. 131, 131 (Bankr. D. Idaho 2001).

Here, no deficiency is being sought. The proceeds obtained at the auction were sufficient to satisfy Debtor's entire outstanding debt to FFCI and to pay a substantial amount on Debtor's obligation to the IRS. Instead, as a response to Debtor's demands in its August 26, 2008 letter, FFCI initiated this lawsuit to obtain a judgment declaring its auction was commercially reasonable and to recover the costs and attorney's fees incurred in securing such a declaratory judgment. Debtor countered with a claim for the surplus it believed it would have received had FFCI's auction been commercially reasonable, a remedy available to it under the UCC. *See* Idaho Code § 28-9-625. Consequently, unlike the deficiency case where the debtor bears no burden once it puts commercial reasonableness at issue, Debtor in this case bears the burden of proving its damages in the amount of the surplus it claims was lost. *See* discussion *infra*. Given these circumstances, the Court finds it appropriate to first address FFCI's Motion with respect to Debtor's counterclaims.

MEMORANDUM OF DECISION - 17

A.    **Debtor's Counterclaims**

1.    **Violation of the UCC**

FFCI is entitled to summary judgment on Debtor's counterclaim for violation of the UCC.

As previously noted, a debtor may recover damages for the loss of any surplus occasioned by a secured party's failure to comply with the UCC.  Idaho Code § 28-9-625(b) & (d).  However, where a debtor seeks damages for the loss of a surplus, the burden is on the debtor to prove the amount of its damages.  *See Voutiritsas v. Intercounty Title Co. of Ill.*, 664 N.E.2d 170, 180 (Ill. App. 1996); 4 White & Summers § 34-14, at p. 505 (6th ed. 2010); *see also* Idaho Code § 28-9-626(e).[15]

Debtor has failed to set forth specific facts to show that there is a genuine issue for trial regarding damages it suffered as a result of FFCI's alleged failure to conduct a commercially reasonable sale.  Other than the Frisbie affidavit and report, which have been stricken and are not properly before this Court, Debtor

---

[15]    Idaho Code § 28-9-626(e) provides that if a surplus is calculated under Idaho Code § 28-9-615(f), the debtor has the burden of establishing that the amount of proceeds obtained from the disposition of collateral was significantly below the amount a commercially reasonable disposition would have brought.  Section 28-9-615(f) in turn states that where the transferee is the secured party and the amount of proceeds is significantly below the range of proceeds that a commercially reasonable disposition would have realized, any surplus or deficiency is calculated based on the amount of proceeds that would have been realized in a commercially reasonable disposition to a transferee other than the secured party.  Section 28-9-615(f) has application in this case as FFCI, the secured party, purchased $365,000 of equipment at the auction.

MEMORANDUM OF DECISION - 18

has produced no evidence to show that it would have received a surplus.[16]

Because Debtor has failed to make a showing sufficient to establish a genuine issue on this essential element on which Debtor would have the burden of proof at trial, FFCI's Motion will be granted with respect to Debtor's counterclaim for violation of the UCC.  *See Celotex*, 477 U.S. at 322–23.

### 2.      Breach of contract

FFCI is also entitled to summary judgment on Debtor's counterclaim for breach of contract.

Debtor's claim is based on its allegation that FFCI violated the UCC, and that by doing so it also breached the Security Agreement.  However, as noted above, Debtor has not produced evidence that may be considered on summary judgment to show it has been damaged by FFCI's alleged failure to conduct a commercially reasonable sale.  "It is a fundamental premise of contract law that, although a plaintiff may have been legally wronged, the plaintiff cannot recover damages unless he was economically injured."  *Hancock v. Idaho Falls Sch. Dist. No. 91*, 2006 WL 1207629, at *4 (D. Idaho May 2, 2006); *see also Bergkamp v. Martin*, 759 P.2d 941, 944 (Idaho App. 1988).  As a result, FFCI's Motion will be granted as to Debtor's breach of contract counterclaim.

---

[16]   The Black affidavit, though offering opinion testimony as to several ways in which the auction was not commercially reasonable, does not contain an opinion concerning the amount of surplus the auction would have produced had it been held in a commercially reasonable manner (i.e., the damages allegedly suffered by Debtor).

MEMORANDUM OF DECISION - 19

### 3.    Negligent misrepresentation

Under Idaho law, the tort of negligent misrepresentation is strictly and narrowly confined to professional relationships involving an accountant.  *See Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007) (citing *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1203 (Idaho 1995)).  No such relationship is involved in this case.  Therefore, FFCI's Motion will be granted with respect to Debtor's negligent misrepresentation counterclaim.

### 4.    Conversion

Debtor claims FFCI is liable to it for the conversion of certain "logging carriages" in which FFCI allegedly had no security interest, but which it nevertheless repossessed and sold at auction.  FFCI asserts that it is entitled to summary judgment on Debtor's conversion counterclaim because the Collateral description in the Security Agreement sufficiently described the logging carriages.

The logging carriages are not listed in Schedule A, *see* Doc. No. 36-6, Ex. B, nor are they specifically mentioned in the UCC-1 financing statement FFCI filed to perfect its security interest, *see* Doc. No. 36-7, Ex. G (incorporating Schedule A).  However, the Security Agreement[17] contains the following language:

---

[17]  This litigation presents no issue regarding the manner of perfection, only issues as between Debtor and FFCI for which the Security Agreement controls.  *See* Idaho Code § 28-9-201.

MEMORANDUM OF DECISION - 20

> Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any schedule to this Agreement (the "Property"), *and in all goods, inventory, equipment, accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest*, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessories of and/or to all of the foregoing (collectively, including the Property, the "Collateral").

(Emphasis added.)  FFCI contends that this language, and in particular the term "equipment," adequately encompassed the logging carriages.  Debtor disagrees.

This Court has previously addressed the sufficiency of collateral descriptions, most recently in *Gugino v. Wells Fargo Bank Northwest, N.A. (In re Lifestyle Home Furnishings, LLC)*, 09.2 I.B.C.R. 41 (Bankr. D. Idaho 2009).  In that case, the Court reiterated that the standard for determining whether a collateral description is adequate is set forth in Idaho Code § 28-9-108.  *Id.* at 42.  That section provides that a description of collateral reasonably identifies the collateral, and is thus sufficient, if it identifies the collateral by "category" or "a type of collateral defined in the uniform commercial code."  Idaho Code § 28-9-108(2) & (3).  One type of collateral defined by the UCC is "equipment."  That term is defined as "goods other than inventory, farm products or consumer goods."  Idaho Code § 28-9-102(33).  The logging equipment fits within this description.  Therefore, the Security Agreement sufficiently identified the logging carriages as collateral securing Debtor's obligation to FFCI.  FFCI's Motion will therefore be granted on Debtor's conversion counterclaim.

MEMORANDUM OF DECISION - 21

Having concluded that summary judgment in FFCI's favor is appropriate on all of Debtor's counterclaims, the Court now turns to FFCI's affirmative claims to determine whether those claims are subject to similar relief.

### B.    FFCI's Claims

#### 1.    Commercial reasonableness

The Court's conclusion that FFCI is entitled to summary judgment on Debtor's counterclaim for violation of the UCC does not end the commercial reasonableness inquiry.  That conclusion is based on Debtor's failure to establish a genuine issue for trial as to its damages and, thus, does not address whether the auction was indeed commercially reasonable.  As the party seeking declaratory relief, FFCI carries the burden of proving that its auction of the Collateral was commercially reasonable.

FFCI asserts two alternate arguments in support of its position that it is entitled to summary judgment on the issue of commercial reasonableness.  FFCI first contends that the Security Agreement sets forth the controlling standards for determining whether the auction was commercially reasonable, and that the undisputed facts demonstrate that FFCI complied with those contractual standards.  Alternatively, FFCI argues that even if the Security Agreement is not controlling, the undisputed facts show that the auction was commercially reasonable.

Debtor contends that the standards for determining the commercial reasonableness of the disposition of collateral, such as the auction in this case, are

MEMORANDUM OF DECISION - 22

exclusively set by Idaho Code § 28-9-627(b), and that genuine issues of fact exist

as to whether FFCI complied with those standards in this case.

### a.    Contract standards

The provisions of the Idaho UCC at issue are plain and unambiguous.  The

UCC requires that every aspect of a sale of collateral, including the method,

manner, time, place, and other terms, must be commercially reasonable.  Idaho

Code § 28-9-610(b).  The obligation of commercial reasonableness in the

disposition of collateral may not be "disclaimed" by agreement.  Idaho Code § 28-

9-602.[18]  However, parties may determine by agreement the standards by which

the fulfillment of commercial reasonableness is to be measured if such standards

are "not manifestly unreasonable."  Idaho Code § 28-9-603(a).[19]  *See*, *e.g.*, *Fin.*

*Fed. Credit Inc. v. Boss Transp., Inc.*, 456 F. Supp.2d 1367, 1373–74 (M.D. Ga.

2006) (interpreting Ga. Code Ann. § 11-9-603(a) (2001), which is identical to

---

[18]  Idaho Code § 28-9-602 states, in relevant part:

Except as otherwise provided in section 28-9-624, to the extent that they give rights
to a debtor or obligor and impose duties on a secured party, the debtor or obligor
may not waive or vary the rules stated in the following listed sections:
. . .
(7) Sections 28-9-610(b), 28-9-611, 28-9-613 and 28-9-614, which deal with
disposition of collateral[.]

[19]  Idaho Code § 28-9-603(a) provides:

The parties may determine by agreement the standards measuring the fulfillment of
the rights of a debtor or obligor and the duties of a secured party under a rule stated
in section 28-9-602 if the standards are not manifestly unreasonable.

MEMORANDUM OF DECISION - 23

Idaho Code § 28-9-603(a)).[20]

Here, the Security Agreement addressed a commercially reasonable sale of

the Collateral. The relevant language of the Security Agreement provides:

> Debtor agrees that any public or private sale shall be deemed
> commercially reasonable (i) if notice of any such sale is mailed to
> Debtor (at the address for Debtor specified herein) at least ten (10) days
> prior to the date of any public sale or after which any private sale will
> occur; (ii) if notice of any public sale is published in a newspaper of
> general circulation in the county where the sale will occur at least once
> within the ten (10) days prior to the sale; (iii) whether the items are sold
> in bulk, singly, or in such lots as Secured Party may elect; (iv) whether
> or not the items sold are in Secured Party's possession and present at
> the time and place of sale; and (v) whether or not Secured Party
> refurbishes, repairs or prepares the items for sale. Secured Party may
> be the purchaser at any public sale.

Under the terms of the Security Agreement, only two things are required for a sale

to be deemed commercially reasonable: (1) notice of the sale to Debtor at least ten

days prior to the date of any public sale or after which any private sale will occur;

and (2) publication of a notice of sale in a newspaper of general circulation in the

county where the sale will occur at least once within the ten days prior to the sale.

The remaining terms in the Security Agreement identify actions FFCI need not

take for the sale to be commercially reasonable, including refurbishing, repairing

---

[20]   In interpreting the Idaho UCC the Court is cognizant of the legislature's direction to
liberally construe and apply the UCC to promote its underlying purposes and policies, which
include making "uniform the law among the various jurisdictions." Idaho Code § 28-1-102.
While the Court looks first to Idaho decisional authority, this directive anticipates reference to
judicial decisions of other jurisdictions construing the common text of the UCC. *See*, *e.g.*,
*Hopkins v. Lojek (In re Scheu)*, 356 B.R. 751, 755 & n.11 (Bankr. D. Idaho 2006) (citing with
approval the Ninth Circuit Bankruptcy Appellate Panel's interpretation of a provision of the
California UCC identical to Idaho's version).

MEMORANDUM OF DECISION - 24

or preparing the collateral items for sale.  The Court is thus tasked with deciding whether these standards satisfy Idaho Code § 28-9-603(a).

The Court finds that the standards in the Security Agreement are, on their face, manifestly unreasonable.  While the Security Agreement addresses the notification to be given Debtor and the advertisement of any public sale, it is either silent as to any other aspects of the sale or expressly disavows obligations on the part of FFCI.  In this way, the Security Agreement limits FFCI's duties related to the disposition of collateral to just the notice and advertising requirements, and frees FFCI from duties related to all other aspects of a sale.  Such restraints are tantamount to a waiver or variation of Debtor's right to commercial reasonableness in *every* aspect of a sale, including method, manner, time, place, and other terms. *See* Idaho Code § 28-9-610(b).  Debtor's right to commercial reasonableness with respect to these other aspects, and FFCI's corresponding duty to comply, may not be so waived or disclaimed.  *See* Idaho Code § 28-9-602 (parties "may not waive or vary" described provisions).  Idaho Code § 28-9-603(a) only permits agreements concerning the standards measuring the *fulfillment* of the rights of a debtor and the duties of a secured party, it does not allow the *waiver* of such rights and duties.

This determination is consistent with the policy concerns articulated in the Official Comment to Idaho Code § 28-9-602:

[I]n the context of rights and duties after default, our legal system

MEMORANDUM OF DECISION - 25

traditionally has looked with suspicion on agreements that limit the debtor's rights and free the secured party of its duties. . . . The context of default offers great opportunity for overreaching. The suspicious attitudes of the courts have been grounded in common sense. This section, like former Section 9-501(3), codifies this long-standing and deeply rooted attitude. The specified rights of the debtor and duties of the secured party may not be waived or varied except as stated.

Because the Security Agreement provisions attempt to waive or vary the commercial reasonableness requirement as to aspects of the auction beyond notice to Debtor and advertisement of the sale, the Court finds those provisions manifestly unreasonable. *See Solfanelli v. Corestates Bank N.A.*, 203 F.3d 197, 202 (3d Cir. 2000) ("An Agreement provision attempting to expunge a commercial reasonableness requirement is per se 'manifestly unreasonable.'"). Accordingly, the Court must evaluate the auction under the standards provided in the UCC.

### b. UCC standards

In the absence of an enforceable agreement between the parties, the determination of whether the disposition of collateral was made in a commercially reasonable manner is governed by Idaho Code § 28-9-627:

A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
. . .
(3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Idaho Code § 28-9-627(b).

Debtor contends that the auction sale was not commercially reasonable in

MEMORANDUM OF DECISION - 26

three respects: (1) how the auction was publicized; (2) the condition of the

equipment when it was auctioned and whether FFCI should have cleaned,

repaired, or allowed the cleaning and repair of the equipment prior to auction; and

(3) the manner in which the auction itself was conducted.  Though many of the

facts surrounding these aspects of the auction appear not to be in dispute, the

parties disagree as to the "reasonable commercial practices among dealers" in

logging equipment of the type sold at the auction.  *See* Idaho Code § 28-9-627(b).

  The parties have produced conflicting expert opinion testimony addressing

whether the auction conformed with reasonable commercial practices for

auctioning off the type of logging equipment at issue.  FFCI submitted the

affidavit of Garry Montague, owner of an auction company with more than 35

years experience marketing and selling equipment, Doc. No. 36-10, while Debtor

responded with the affidavit of Troy Black, president of an auction and appraisal

company with approximately 17 years of appraisal and auction experience.  Doc.

No. 45.

  In light of these submissions, the Court finds that Debtor has produced

sufficient facts to establish a genuine issue for trial as to the commercial

reasonableness of the auction.  To determine the reasonable commercial practices

applicable in this case, and thus whether the auction was ultimately commercially

reasonable, the Court will be required to weigh the opinions of the parties'

respective expert witnesses.  Weighing evidence in this manner is inappropriate at

MEMORANDUM OF DECISION - 27

the summary judgment stage.  Such analysis is more properly reserved for trial

where the Court will have the benefit of live testimony and cross-examination.

Therefore, FFCI's Motion will be denied as to its claim for declaratory relief on

the commercial reasonableness of the auction.

### 2.      Attorney's fees

Because FFCI is not entitled to summary judgment on the issue of

commercial reasonableness, FFCI's Motion must also be denied with respect to

FFCI's claim for attorney's fees and costs under the Security Agreement and

Guaranties.

In short, the Court will grant summary judgment to FFCI dismissing all

four of Debtor's counterclaims, and deny summary judgment on FFCI's claim for

a declaratory judgment and an award of costs and attorney's fees.  The sole issue

remaining for trial is whether the auction was commercially reasonable.  However,

because the Court grants summary judgment on all of Debtor's counterclaims, the

only economic recovery potentially available is an award for costs and reasonable

attorney's fees to the prevailing party, either under the Security Agreement and

Guaranties or pursuant to applicable Idaho law.  *See Kilborn v. Haun (In re Haun)*,

396 B.R. 522, 527 (Bankr. D. Idaho 2008) ("A prevailing party in a bankruptcy

proceeding may be entitled to an award of attorney fees in accordance with

applicable state law if state law governs the substantive issues raised in the

proceedings.") (quoting *Bertola v. N. Wis. Produce Co. (In re Bertola)*, 317 B.R.

MEMORANDUM OF DECISION - 28

95, 99 (9th Cir. BAP 2004)).[21]

**CONCLUSION**

Based on the reasons set forth above, FFCI's Motion will be granted as to

Debtor's counterclaims for violation of the UCC, breach of contract, negligent

misrepresentation, and conversion.  The Motion will be denied with respect to

FFCI's claim for declaratory relief on the issue of commercial reasonableness, and

FFCI's claim for costs and attorney's fees.

Counsel for FFCI will submit an appropriate order.

DATED: September 13, 2010



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[21] In its pleadings, Debtor requests attorney's fees under Idaho Code § 12-120(3).  *See*
Doc. No. 35.

MEMORANDUM OF DECISION - 29